**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Melissa Stokka,

    Plaintiff,

v.

Scottsdale Unified School District, et al.,

    Defendants.

No. CV-24-01903-PHX-DJH

**ORDER**

Defendant Scottsdale Unified School District ("Defendant") has filed a Motion to Dismiss Plaintiff Melissa Stokka's ("Plaintiff") Complaint under Federal Rule of Civil Procedure 12(b)(6)[1] (Doc. 7). The matter is fully briefed. (Docs. 8–9). The Court must now determine whether Plaintiff has pled sufficient facts under Rule 12(b)(6) to state a claim for which relief can be granted. For the following reasons, the Court will dismiss Plaintiff's retaliation claim.

**I.   Background[2]**

This case concerns allegations of employment discrimination and retaliation. Plaintiff was hired by Defendant as a fifth-grade schoolteacher at Cochise Elementary

---

[1] Any references to "Rules" herein are to the Federal Rules of Civil Procedure, unless stated otherwise.

[2] Unless otherwise indicated, these facts are taken from Plaintiff's Complaint (Doc. 1). When evaluating a motion to dismiss, the court "accept[s] as true the well-pleaded factual allegations in the complaint." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (citation omitted).

School ("Cochise") during the 2022–2023 school year. (Doc. 1 at ¶ 8). Plaintiff's employment at Cochise was only for one year. (*Id.*) During this time, Plaintiff began fertility treatments including in vitro fertilization ("IVF") to become pregnant. (*Id.* at ¶ 10). Plaintiff shared with teachers and administrators at Cochise, including Principal Sheila Miller, that she was undergoing fertility treatments. (*Id.* at ¶ 11). Specifically, Plaintiff disclosed her efforts to become pregnant to Principal Miller during a holiday party on December 16, 2022. (*Id.* at ¶ 31). Plaintiff continued receiving fertility treatments throughout the 2022–2023 school year. (*Id*. at ¶¶ 10, 39).

On or about March 20, 2023, Defendant began conducting interviews for several teaching positions for the following school year at Cochise, including Plaintiff's position. (*Id.* at ¶ 14). Plaintiff wanted to teach the following school year and requested an interview for the open positions, including her current position. (*Id.* at ¶¶ 15, 25). Plaintiff prepared to answer questions about her potential pregnancy and plans to minimize interruptions to her classroom should she become pregnant. (*Id.* at ¶¶ 16–17). Plaintiff's interview was conducted on March 24, 2023, before a four-member panel consisting of Principal Miller, the assistant principal, and two fifth-grade teachers at Cochise. (*Id.* at ¶¶ 15, 18). During this interview, Plaintiff disclosed her efforts to become pregnant. (*Id.* at ¶ 31).

On March 28, 2024, Principal Miller informed Plaintiff that she would not be hired for any teaching position at Cochise for the following school year. (*Id.* at ¶ 19). Principal Miller stated that Plaintiff was not selected because she did not possess the experience necessary to teach science. (*Id.* at ¶ 20). However, Plaintiff's 2022–2023 curriculum included science, technology, engineering, and mathematics activities. (*Id.* at ¶ 21). Additionally, she was assisting her students with their submission for the 2023 Thomas Edison Pitch Contest, a national science competition, where they ultimately secured first place. (*Id.* at ¶ 22). Plaintiff later learned the applicant who was offered the position she applied for had less than two years of teaching experience. (*Id.* at ¶ 23). Plaintiff, on the other hand, had over 20 years of teaching experience. (*Id.* at ¶ 9).

On or around April 10, 2023, a teacher who was on the interview panel informed

Plaintiff that she was not hired because Principal Miller did not want to hire another teacher who was trying to become pregnant. (*Id.* at ¶¶ 24–25). After learning this, on April 11, 2023, Plaintiff reported Principal Miller's alleged discriminatory conduct to Dr. Scott Menzel, Superintendent of Scottsdale Unified School District. (*Id.* at ¶ 27). On or around April 15, 2023, Defendant's Human Resources Department ("HRD") initiated an investigation into Plaintiff's allegations. (*Id.* at ¶¶ 28–29). Then, on or around April 19, 2023, representatives of Defendant's HRD met with Principal Miller at Cochise, allegedly concerning Plaintiff's allegations. (*Id.* at ¶ 32). Sometime thereafter, while Plaintiff and her students were filming a video for the Thomas Edison Pitch Contest in the school's courtyard, Principal Miller began berating her in front of others and ordered the students to stop working on their project. (*Id.* at ¶¶ 33–34). Although this incident was reported by a volunteer, Defendant allegedly took no corrective action. (*Id.* at ¶¶ 32, 36).

On or around July 2022, Plaintiff learned that at some point Principal Miller asked another teacher to write a negative letter about Plaintiff to Defendant's HRD. (*Id.* at ¶ 42). This request was allegedly made with the intent to further interfere with Plaintiff's employment efforts. (*Id.*).

As a result of the alleged conduct, on October 5, 2023, Plaintiff filed a Charge of Discrimination against Defendant with the Arizona Civil Rights Division ("ACRD") and the Equal Employment Opportunity Commission ("EEOC") (together, the "ACRD/EEOC") (Doc. 7-1 at 11–13).[3] The ACRD/EEOC initiated an investigation and issued its Determination and Notice of Rights on April 10, 2024. (Doc 8 at 5). Plaintiff then filed her Notice of Claim on April 18, 2024. (Doc. 7-1 at 2–9).

### A. Procedural History

On or around July 8, 2024, Plaintiff filed her Complaint in the Maricopa County Superior Court (case number CV2024-017832), naming Scottsdale Unified School District and Sheila Miller, Principal of Cochise, as Defendants. (*See generally* Doc. 1). Defendant

---

[3] For reasons discussed *infra*, the Court accepts these exhibits filed in support of Defendant's Motion without converting it to a motion for summary judgment.

- 3 -

timely removed on July 31, 2024, on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (*Id.* at 1–2). In the Complaint, Plaintiff alleges she was not hired to teach at Cochise for the 2023–2024 school year because Principal Miller refused to hire any applicant that was pregnant or trying to become pregnant. (*Id.* at ¶¶ 13, 25). Plaintiff further alleges that after she reported Principal Miller's discriminatory conduct to Defendant, Principal Miller publicly berated her in the school's courtyard, and requested another teacher at Cochise write a negative letter about her to Defendant's HRD in retaliation. (*Id.* at ¶¶ 42).

Plaintiff asserted three claims in connection with her employment: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e *et seq.*, and the Arizona Civil Rights Act ("ACRA"), A.R.S. §§ 41-1461–67; (2) retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; and (3) intentional infliction of emotional distress. (Doc. 1 at ¶¶ 44–74).[4] Plaintiff seeks compensatory damages plus interest, and costs and reasonable attorneys' fees. Defendant moves to dismiss Plaintiff's Complaint. (Doc. 7).

**II.   Legal Standard.**

Rule 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Dismissal for failure to state a claim can be based on either "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (as amended). To survive a Rule 12(b)(6) dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[4] On August 6, 2024, the Court approved the Parties' Partial Stipulation (Doc. 5) dismissing Plaintiff's action against Defendant Sheila Miller only and Count 3 of Plaintiff's claim—intentional infliction of emotional distress—against the remaining Defendant Scottsdale Unified School District (Doc. 6).

- 4 -

At this stage, the court construes the well-pleaded factual allegations, taken as true, "in the light most favorable to the [plaintiff]." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (quoting *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008)). The court determines only whether the factual allegations provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. That is, whether these factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. While this standard does not require "detailed factual allegations," the allegations must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. The plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court is not required to "accept as true a legal conclusion couched as a factual allegation." *Id.* "'[C]onclusory allegations of law and unwarranted inferences are insufficient' to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (quoting *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n. 5 (9th Cir. 2005)). The factual allegations must be well-plead and "allow[] the court to draw the reasonable inference" of liability. *Iqbal*, 556 U.S. at 678.

If the plaintiff "fails to state a claim on which relief may be granted," the court must dismiss the claim. 28 U.S.C. § 1915(e)(2)(B)(ii). However, if the pleading can be remedied by amendment by adding factual allegations, the court should grant an opportunity to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000).

**III.   Discussion**

Defendant moves to dismiss Plaintiff's Complaint, arguing that her claims are time barred and that she has failed to state a claim under Rule 12(b)(6). (Doc. 7). In support of its Motion, Defendant asks the Court to consider Plaintiff's Notice of Claim ("Notice") and Charge of Discrimination ("Charge") filed as Exhibits A and B.[5] (*Id.* at 3 n.4, 5 n.5).

---

[5] A court may consider extrinsic evidence incorporated by reference "whose authenticity is not contested, and the plaintiff's complaint necessarily relies on them" without converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (finding proper to consider extrinsic evidence where the parties did not dispute the authenticity and substance of the evidence

Defendant also asks the Court to take judicial notice of Defendant's (1) calendar for school year 2022–2023 and (2) "Away for the Day" cell phone policy for consideration without converting its Motion to a motion for summary judgment. (*Id*. at 6, n.6; 7, n.7).

On the merits, Defendant argues that (1) Plaintiff's ACRA discrimination claim is time barred for failing to timely file a notice of claim (*Id.* at 3–5); (2) time barred for failing to timely file her Complaint (*Id*. at 5); (3) Plaintiff has failed to state a retaliation claim under Title VII because she has not alleged a causal link between her protected activity and adverse action (*Id*. at 5–7); and (4) Plaintiff has failed to plausibly plead a sex discrimination claim under Title VII and ARCA because she is not a member of a protected class. (*Id*. at 7–9). The Court will address each argument in turn.

**A.**     **Judicial Notice**

Defendant requests the Court take judicial notice of Defendant's (1) calendar for school year 2022–2023 and (2) "Away for the Day" cell phone policy for consideration without converting its Motion to a motion for summary judgment. (Doc. 7 at 6, n.6; 7, n.7). Defendant makes this request to dispute factual allegations in Plaintiff's Complaint; specifically, when she discovered that Principal Miller requested a negative letter about her and Principal Miller's motivation for berating her on April 19, 2023. (*Id.* at 6) (citing Doc. 1 at ¶¶ 33, 42).

Judicial notice of "matters of public record" is an exception to the general rule that a court may not consider any material beyond the pleadings when considering a 12(b)(6)

---

was critical to plaintiff's claims) (citations omitted); *see also United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Because the Parties do not dispute the authenticity of the Notice and Charge, and the Complaint necessarily rely on these documents, they may be incorporated by reference.

The Court further notes Plaintiff attached the Determination and Notice of Rights ("Determination") as an exhibit to her Response to Defendant's Motion (Doc. 8-1) without requesting the Court to consider this exhibit in making its determination. (Doc. 8 at 3 n.1). Although the Court has the discretion to not consider Plaintiff's filing, it finds the Determination is incorporated by reference for the same reasons it will consider the Notice and Charge.

- 6 -

dismissal. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). However, a court may not take judicial notice of facts that are "subject to reasonable dispute." *Id.* (citing Fed. R. Evid. 201(b)). Here, while the Court may take judicial notice of the calendar to provide when the 2022–2023 school year ended and that the school has a cell phone policy in place, Defendant seeks to use these facts to dispute factual allegations. *Id.* at 689–90. Defendant seeks to use these undisputed matters of public record—*i.e.*, the dates—to dispute factual allegations in Plaintiff's Complaint. The Court declines to do so because, at the 12(b)(6) dismissal stage, it must construe the facts alleged in the Complaint most favorable to Plaintiff. *Cousins*, 568 F.3d at 1067.

Plaintiff alleges that Principal Miller's conduct on April 19, 2023, was in retaliation for her report of discrimination. (Doc. 1 at ¶ 35). Defendant requests the Court consider the "Away for the Day" policy to dispute Plaintiff's allegation of Principal Miller's motivation and justification of such conduct. (Docs. 7 at 7; 9 at 4–5). The underlying motives for berating Plaintiff in the school's courtyard is a factual dispute. For similar reasons, consideration of the "Away for the Day" policy is inappropriate at this time as it concerns factual interpretation and credibility issues; therefore, the Court declines to take judicial notice. *See generally Updike v. Am. Honda Motor Co. Inc.*, 2024 WL 4266593, at *10 (D. Ariz. Sept. 23, 2024) (noting that credibility determinations are within the exclusive province of the fact-finder—not the Court) (citations omitted).

### B.    Timeliness

Defendant argues Plaintiff's discrimination claim is time barred because she failed to file her: (1) Notice within 180 days as required by A.R.S. § 12-821.01(A); and (2) Complaint within one year after her cause of action accrued as required by A.R.S. § 12-821. (Doc. 7 at 3–5). Neither argument has merit.

When a district court "hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). State substantive law includes the state's statutes of limitations. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d

524, 530 (9th Cir. 2011). Federal courts must also "abide by a state's tolling rules, which are integrally related to statutes of limitations." *Id.* In Arizona, a statute of limitations defense may be raised on a motion to dismiss "if it appears on the face of the complaint that the claim is barred." *Republic Nat'l Bank of N.Y. v. Pima Cnty.*, 25 P.3d 1, 6 (Ariz. Ct. App. 2001). "However, courts disfavor statute of limitations defenses, preferring instead to resolve litigation on the merits when possible." *City of Tucson v. Clear Channel Outdoor, Inc.*, 181 P.3d 219, 225 (Ariz. Ct. App. 2008).

Generally, determining when an action has accrued is a question of fact. However, "[a]ccrual can be decided as a matter of law when 'there is no genuine dispute as to facts showing the plaintiff knew or should have known the basis for the claim.'" *Strojnik v. State ex rel. Brnovich*, 2021 WL 3051887, at *3 (Ariz. Ct. App. July 20, 2021) (quoting *Humphrey v. State*, 466 P.3d 368, 375 ¶ 25 (Ariz. Ct. App. 2020)). When the Notice, Charge, and Determination were issued are necessary to determine whether Plaintiff's claims are barred for failure to file within the time periods set forth in A.R.S. §§ 12-821.01, 41-1481. *See Madden-Tyler v. Maricopa County*, 943 P.2d 822, 828 (Ariz. Ct. App. 1997) (holding that under the ACRA, "the filing of a charge of discrimination with an administrative agency is a prerequisite to filing a lawsuit on the alleged discrimination.") (citing *Ornelas v. Scoa Industries, Inc.*, 587 P.2d 266, 266–67 (Ariz. 1978)). The Court finds Plaintiff complied with the statutory requirements and her state law claims are timely.

### 1. The Time to File a Notice of Claim was Tolled While Plaintiff Exhausted Her Administrative Remedies

Defendant argues Plaintiff's cause of action began to accrue on April 10, 2023, when she learned she was allegedly not hired because of her efforts to become pregnant.[6]

---

[6] Defendant later argues Plaintiff's cause of action began to accrue on either March 28, 2023, when she was not offered a teaching position, or on April 11, 2023, when she submitted her internal grievance to Dr. Menzel. (Doc. 9 at 3). The plain language of A.R.S. § 12-821.01(B) provides that Plaintiff's cause of action would not begin to accrue until April 10, 2023, when she learned of Principal Miller's alleged violative conduct. For the purposes of this Motion, the Court rejects that Plaintiff's cause of action began to accrue on March 28th because, at that time, she did not know the reason she was not hired was for

(Doc. 7 at 4). Defendant argues Plaintiff filing her Notice of Claim on April 18, 2024, exceeds the 180-day time limit set forth in A.R.S. § 12-821.01(A), and therefore her claims are barred. (*Id.* at 3–5). However, the Parties do not dispute Plaintiff first learned of the alleged discriminatory reason she was not hired until April 10, 2023; she filed her Charge with the ACRD/EEOC on October 5, 2023;[7] she filed her Notice with Defendant on April 18, 2024; and the Complaint was filed on or about July 8, 2024. (*Id.* at 4–5).

Arizona law mandates that any person who has a claim against a public entity must file a notice of claim with that public entity within 180 days "after the cause of action accrues." A.R.S. § 12-821.01(A). The statute defines "accrual" as the time "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." *Id*. at § 12-821.01(B). Failure to strictly comply with the statute's requirements statutorily precludes a plaintiff's claims. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 492 (Ariz. 2007). Accepting the well-plead factual allegations in the Complaint as true, Plaintiff learned of the alleged discriminatory reason she was not hired on April 10, 2023. (Doc. 1 at ¶ 24 ("On April 10, 2024, Mrs. Leden (who was on the interview panel) revealed to [Plaintiff] that Principal Miller stated she would not hire another teacher trying to become pregnant.")). Reading *only* sections 12-821.01(A) and (B), Defendant would be correct that Plaintiff's claims are barred for filing her Notice on April 18, 2024—more than a year after her claim began to accrue. However, as Plaintiff counters, A.R.S. § 12-821.01 includes a tolling provision that applies to her claims. (Doc. 8 at 4–5). The tolling provision in A.R.S. § 12-821.01(C) states:

> "*Notwithstanding subsection A*, any claim that *must* be submitted to . . . an administrative claims process or review

---

an allegedly discriminatory reason. (Doc. 1 at ¶ 19). For similar reasons, the Court rejects Defendant's argument that her cause of action began to accrue on April 11th. (*Id.* at ¶ 24).

[7] Plaintiff asserts, and Defendant did not expressly dispute, that the ACRD/EEOC issued its Determination and Notice of Rights on April 10, 2024. (Doc. 8 at 4–5).

- 9 -

>process pursuant to a statute, . . . *shall not accrue* for the purposes of this statute *until all such procedures, processes or remedies have been exhausted.* The time in which to give notice of a potential claim and to sue on the claim shall run from the date on which a *final decision or notice of disposition is issued* in an alternative dispute resolution procedure, *administrative claim process* or review process."

A.R.S. § 12-821.01(C) (emphasis added). The limitations period for claims subject to the mandatory exhaustion of administrative remedies are tolled under this statute. *See Kosman v. State*, 16 P.3d 211, 213 (Ariz. Ct. App. 2000). The time to give notice of any claim that falls within this statutory provision does not accrue until *after*, inter alia, a final decision or notice of disposition is issued. *Id.* Defendant seems to completely ignore Plaintiff's argument and A.R.S. § 12-821.01(C)'s tolling provision altogether. The Court declines to do the same.

Because Plaintiff's claims concern employment discrimination, her claims are governed by A.R.S. § 41-1481, which required her to file a charge with the ACRD/EEOC *before* pursuing any civil action. A.R.S. § 41-1481. Since Plaintiff's claims are governed by a statute mandating exhaustion of administrative remedies, A.R.S. § 41-1481(C)'s tolling provision applies. Plaintiff was not required to file her Notice of Claim with Defendant until *after* the ACRD/EEOC issued its final decision. Because the ACRD/EEOC did not issue its Determination of Notice and Rights until April 10, 2024, her cause of action did not begin to accrue until this date. Therefore, Plaintiff filing her Notice on April 18, 2024, was within A.R.S. § 12-821.01(A)'s 180-day timeframe.

### 2.  **Plaintiff Timely Filed the Complaint**

Defendant argues Plaintiff's claims are barred because Plaintiff failed to file her Complaint within one year after her cause of action accrued as required by A.R.S. § 12-821. (Docs. 7 at 5; 9 at 3). Defendant contends A.R.S. § 41-1481(A) does not toll Plaintiff's claims because it does not state a charge be filed before filing suit. (Doc. 9 at 3). Defendant's argument fails because Plaintiff's claims are subject to the mandatory exhaustion of administrative remedies under A.R.S. § 41-1481.

Defendant's reliance on *Hookom v. Chandler Unified Sch. Dist.*, 2024 WL 3818603 (D. Ariz. Aug. 14, 2024) is unpersuasive. In *Hookom*, the plaintiffs pursued administrative remedies for three years before filing suit against a public entity. *Id.* at *2. In granting dismissal, the court determined A.R.S. § 12-821(C)'s tolling provision did not apply because there was no statute that mandated plaintiffs exhaust their administrative remedies before filing suit. *Id.* *Hookom* is inapplicable because Plaintiff's claims are subject to a statutory mandate to exhaust administrative remedies, tolling A.R.S. § 12-821(A)'s one-year limitations period.

Defendant provides no authority that A.R.S. § 41-1481(A) does not trigger A.R.S. § 12-821(C)'s tolling provision. Yet, there is ample authority that failure to exhaust the administrative remedies mandated by A.R.S. § 41-1481 constitutes a waiver of any subsequent suits. *E.g.*, *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 746 (9th Cir. 2004) (affirming summary judgement for defendant that plaintiff's failure to exhaust administrative remedies constituted waiver of the retaliation claim) (citing *Ornelas v. Scoa Indus., Inc.*, 587 P.2d 266, 266–67 (Ariz. Ct. App. 1978).

Here, because Plaintiff was required by A.R.S. § 41-1481 to exhaust her administrative remedies before filing suit, § 12-821's one-year time limitation was tolled while she exhausted those administrative remedies. Therefore, when the ACRD/EEOC issued its Determination on April 10, 2024, Plaintiff had until April 10, 2025, to file suit. By filing her Complaint on July 8, 2024 (Doc. 7 at 5), Plaintiff was well within the time limitations of A.R.S. §§ 12-821, 12-821.01.

C.   **Sex Discrimination**

Plaintiff brings a claim for sex discrimination under the ACRA and Title VII.[8]

---

[8] The ACRA is "generally identical" to Title VII, and therefore "federal Title VII case law [is] persuasive in the interpretation of [the Arizona] Civil Rights Act." *Bodett*, 366 F.3d at 742 (quoting *Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 673 P.2d 907, 909–10, n.3 (1983)). "[I]n enacting civil rights legislation which is substantially identical to the federal act, the Arizona legislature intended to accomplish the same objectives on the state level." *Civil Rights Div. of Ariz. Dep't of Law v. Superior Ct. In & For Pima Cty.*, 706

- 11 -

Defendant argues Plaintiff's Complaint fails to state a claim for sex discrimination because (1) she is not a member of a protected class and (2) her position was filled by "another female of child-bearing age." (Doc. 7 at 7–10). For the reasons discussed below, the Court finds Plaintiff has plausibly alleged a sex discrimination claim.

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show evidence of either discriminatory treatment or impact. *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th Cir. 1993). In the absence of direct evidence of discrimination, the plaintiff may rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green* to establish a *prima facie* case of discriminatory treatment. 411 U.S. 792, 802 (1973). Under this framework, to state a *prima facie case* of discrimination, a plaintiff must show: "'(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably.'" *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir.1998)).

Defendant argues dismissal is appropriate because Plaintiff's Complaint fails the first and fourth elements. (Doc. 7 at 7–9). Specifically, Defendant argues Plaintiff receiving treatment for infertility and "hoping to become pregnant" does not make her a member of a protected class under 42 U.S.C. § 2000e(k) and A.R.S. § 41-1461(2) for a sex discrimination claim. (*Id.* at 8). Construing the well-pleaded factual allegations in Plaintiff's Complaint in her favor, as the non-moving party, the Court finds that she has plead facts sufficient to state a sex discrimination claim.

Section 701(k) of Title VII, as amended in 1978 by the Pregnancy Discrimination

---

P.2d 745, 750 (Ariz. Ct. App. 1985). Accordingly, the Court will apply the same legal standard in considering whether Plaintiff plausibly alleged a claim for discrimination under both federal Title VII law and state ACRA law.

- 12 -

Act ("PDA"), makes it unlawful for an employer to discharge or otherwise discriminate against a woman because she is pregnant. 42 U.S.C. §§ 2000e(k) and 2000e–2(a) (1982). Defendant asserts Plaintiff's Complaint fails to state a claim because receiving treatment for infertility and "hoping to become pregnant" does not make her a member of a protected class—specifically, pregnancy-related sex discrimination. (Doc. 7 at 8). Defendant argues Plaintiff does not belong to a protected class because she was not pregnant, had not given birth, and did not have a medical condition related to pregnancy or childbirth when she was not selected. (*Id*.) Plaintiff counters she is a member of a protected class because of her potential to become pregnant and her ongoing, outspoken, efforts to become pregnant. (Doc. 8 at 9).

In support of its assertion, Defendant relies on two out of circuit cases, *LaPorta v. Wal-Mart Stores, Inc.*, 163 F. Supp. 2d 758 (W.D. Mich. 2001) and *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674 (8th Cir. 1996). (Doc. 7 at 8), neither of which are persuasive. *Krauel* held that a health insurance plan which excludes coverage for infertility treatment does not violate the PDA because infertility affects both men and women and is therefore gender neutral. *Krauel*, 95 F.3d at 677–78. Infertility, on its own, is something "all individuals" could suffer from. *Id.* at 678. The court in *LaPorta* applied a similar focus and reasoning. *See* 163 F. Supp. 2d at 770 ("I find that *Krauel* is the more persuasive authority on this issue of statutory construction. Neither the language nor the legislative history of the PDA reflects an intent to cover infertility.").

The Ninth Circuit has not yet addressed whether Title VII protects a woman from discrimination based on adverse employment actions related to her IVF efforts to become pregnant. *See Cleese v. Hewlett-Packard Co.*, 911 F. Supp. 1312, 1317 (D. Or. 1995) (acknowledging that the Ninth Circuit has not yet recognized whether women who are attempting to become pregnant are protected under Title VII). However, the Seventh Circuit has persuasively addressed this question. In *Hall v. Nalco Co.*, 534 F.3d 644 (7th Cir. 2008), the plaintiff was fired for taking time off to undergo IVF procedures. The Seventh Circuit found she alleged a cognizable sex-discrimination claim under Title VII

1  because "[e]mployees terminated for taking time off to undergo IVF—just like those
2  terminated for taking time off to give birth or receive other pregnancy-related care—will
3  always be women . . . [the plaintiff] was terminated not for the gender-neutral condition of
4  infertility, but rather for the gender-specific quality of childbearing capacity." *Id*. at 648–
5  49. The reasoning in *Hall* is persuasive. As the Seventh Circuit noted, only women
6  undergo IVF treatment. *Id*. As alleged in Plaintiff's Complaint, she was terminated based
7  on her gender-specific efforts and ability to become pregnant—which is a cognizable claim
8  under Title VII. *See id.*; 42 U.S.C. § 2000e–2(a)(1).

Defendant's focus on someone who receives infertility treatments ignores the "simple test" for whether a pregnancy-related claim amounts to sex discrimination under Title VII—which is whether the employer treated an employee "in a manner which but for that person's sex would be different." *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 683, (1983) (citing *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711, (1978)). Here, Plaintiff does not allege Defendant discriminated against her solely because she was infertile, was receiving treatment for infertility, or hoping to become pregnant. Instead, Plaintiff alleges Defendant refused to hire her because she was trying to become pregnant and was making active efforts to become pregnant. (Doc. 1 at ¶ 48). Furthermore, Plaintiff alleges Principal Miller openly stated she would refuse to hire any applicant that was pregnant or trying to become pregnant. (*Id.* at ¶¶ 13, 25). Plaintiff also alleges Principal Miller knew that she was trying to become pregnant (*Id.* at ¶ 31), and, despite her being qualified for a teaching position, Principal Miller refused to hire her. (*Id.* at ¶ 20). Plaintiff has sufficiently plead sex discrimination through these allegations.

Defendant further argues Plaintiff fails to state a claim of sex discrimination because the position she applied for was filled by another female of child-bearing age. (Doc. 7 at 8). Again, Defendant misses the point of the protected status. As discussed, Plaintiff alleges discrimination on the basis that ***she was trying to become pregnant***, not because she was woman or of child-bearing age. (Doc. 1 at ¶ 51) (emphasis added).

For these reasons, accepting the well-plead factual allegations as true, Plaintiff has plausibly alleged a sex discrimination claim in violation of the ACRA and Title VII.

**D.     Retaliation**

Title VII also prohibits retaliation against an employee for opposing any employment practice made unlawful by Title VII, or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to Title VII enforcement. 42 U.S.C. § 2000e–3(a). For a retaliation claim, a plaintiff must show: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).[9] Construing the factual allegations in the Complaint most favorable to Plaintiff, her Complaint fails to plead facts sufficient to state a claim for retaliation under Title VII.

**1.     Adverse Actions**

To satisfy the second element to avoid a Rule 12(b)(6) dismissal, Plaintiff must plead sufficient facts Defendant subjected her to a materially adverse employment action. An adverse employment action involves any decision by an employer that affects "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). Title VII's antiretaliation provision protects an individual not from all retaliation, but from "materially adverse" employment actions—actions that might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (quotations omitted); *Ray*, 217 F.3d at 1237 ("[A]n adverse employment action is adverse treatment that is reasonably likely to deter employees from engaging in protected activity.")  Although "a wide array of disadvantageous changes in the workplace" might constitute an adverse employment action, *Ray*, 217 F.3d at 1240, "not every employment decision amounts to an adverse employment action."  *Brooks*, 229 F.3d at 928 (recognizing that "termination,

---

[9] Neither Party disputes Plaintiff engaged in a protected activity when she reported Principal Miller's alleged discriminatory conduct to Superintendent Menzel on April 11, 2023; the remaining elements are disputed.

1 dissemination of a negative employment reference, issuance of an undeserved negative
2 performance review and refusal to consider for promotion" constitute adverse employment
3 actions) (collecting cases). "[O]nly non-trivial employment actions that would deter
4 reasonable employees from [engaging in a protected activity] will constitute actionable
5 retaliation." *Id.*

6 Defendant contends the two instances alleged in Plaintiff's Complaint—the April
7 19, 2023, incident (Doc. 1 at ¶ 33) and Principal Miller's request for a negative letter
8 (*Id.* at ¶ 42)—do not constitute adverse actions because neither would dissuade a
9 reasonable employee from engaging in protected activity. (Docs. 7 at 6–7; 9 at 3–5).
10 Plaintiff counters these constitute adverse actions because (1) the justification for Principal
11 Miller's conduct on April 19th is based on a policy that was not yet in effect, and (2)
12 Principal Miller's request was motivated by retaliatory animus and would deter employees
13 from engaging in similar protected activity. (Doc. 8 at 6–9).

14 Dissemination of a negative job reference from a former employer motivated by a
15 retaliatory animus that ultimately does not affect a prospective employer's decision can
16 constitute an adverse action. *Hashimoto v. Dalton*, 118 F.3d 671, 675–76 (9th Cir. 1997).
17 However, a negative evaluation that is not disseminated and does not give rise to any
18 further negative employment action is not an adverse employment action for a retaliation
19 claim. *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112–13 (9th Cir.2000) (affirming
20 summary judgment for defendant that a negative evaluation that does not remain in the
21 employee's file is not an adverse employment action). Here, Plaintiff merely alleges that
22 Principal Miller *asked* for a negative letter with a retaliatory animus, that is, with an intent
23 to interfere with her career. (Doc. 1 at ¶ 42). Even accepting that Principal Miller was
24 "motivated by retaliatory animus," like the defendant in *Hashimoto*, 118 F.3d at 673,
25 nothing in Plaintiff's Complaint alleges whether any negative letter was placed in her file
26 let alone disseminated. Furthermore, Plaintiff has not alleged any facts that because of
27 Principal Miller's request, she was demoted, stripped of work responsibilities, received
28 different or more burdensome work responsibilities, fired or suspended, denied any raises,

1   nor reduced in salary or in any other benefit.  *Kortan*, 217 F.3d at 1113; *see also Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002) (dismissing retaliation claim where "mediocre evaluations" did not result in "any meaningful change in work assignments, either in the form of relieving him of responsibilities or saddling him with additional, burdensome tasks.") (citations omitted).

Similarly, Plaintiff's Complaint fails to allege facts sufficient to plausibly state that a single instance of being berated in front of others constitutes an adverse action.  *Cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.") (citation omitted). When a hostile work environment is alleged as part of a retaliation claim, a plaintiff must show the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[10] *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir.2005) (quoting *Ray*, 217 F.3d at 1245 and *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff alleges students "were driven to tears as a result of Principal Miller's" conduct.  (Doc. 1 at ¶ 33).  However, when contrasted with what the Ninth Circuit has found to be sufficiently severe or pervasive conduct, this single instance falls short.  *See Kortan*, 217 F.3d at 1110–11 (finding that while a supervisor's references to a female employee as a "castrating bitch," "madonna," or "regina" in plaintiff's presence and name-calling of plaintiff as "Medea" were offensive, his conduct was not severe or pervasive enough to unreasonably interfere with plaintiff's employment); *Ray*, 217 F.3d at 1245–46 (finding a plaintiff's allegations, among many, that his supervisors regularly yelled at him during staff meetings, called him a "liar," "troublemaker," and "rabble rouser," told him to "shut up," and made it difficult for him to complete his tasks constituted work difficulties that "rose to such a level that [plaintiff] took stress leave from his job").  Even construing

---

[10] Plaintiff alleges Principal Miller's conduct on April 19, 2023, created a "hostile work environment." (Doc. 1 at ¶ 60).

- 17 -

1  the factual allegations most favorable to Plaintiff, her Complaint fails to allege sufficiently
2  severe or pervasive conduct that altered the conditions of her employment and created an
3  abusive working environment to constitute retaliation.

### 2. Causal Link

Plaintiff alleges that at some point in time, Principal Miller asked another teacher to write a negative letter about her to Defendant's HRD with the purpose of further interfering with her teaching career. (Doc. 1 at ¶ 42). Plaintiff does not provide any additional factual allegations. Defendant argues there is no causal link because Plaintiff learned about Principal Miller's request after her employment ended. (Doc. 7 at 6–7).

The Court rejects Defendant's argument that Plaintiff learning about Principal Miller's alleged request for a negative letter *after* her employment ended is not actionable under Title VII. (*Id.*). As the Supreme Court recognized in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997), the protections afforded by Title VII's antiretaliation provision extends to former employees because it is consistent with its primary purpose of "[m]aintaining unfettered access to statutory remedial mechanisms." *Id.* (citations omitted). Defendant cannot shield itself from liability for any alleged retaliatory adverse actions because Plaintiff did not learn of such action until after her employment ended. The timing of Plaintiff's discovery of Principal Miller's alleged request is not a shield from liability. If there is a causal link between the protected activity and the retaliatory action, whether Plaintiff was an employee is not relevant. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (holding causation may be inferred from timing alone when an adverse employment action follows on the heels of protected activity). However, Plaintiff fails to plausibly allege this causal link.

To show a causal link between the activity protected by Title VII and retaliation by an employer, a plaintiff must allege sufficient facts to raise an inference that the protected activity was likely the reason for the adverse action. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793. (9th Cir.1982). Essential to establishing the causal link is evidence that the employer knew that Plaintiff engaged in protected activity. *Id.*; *Thomas v. City of*

*Beaverton*, 379 F.3d 802 (9th Cir. 2004) (noting an employer's awareness of employees protected activity is important in establishing the causal link between that activity and the alleged retaliatory action). Here, Plaintiff provides no factual allegations that at the time Principal Miller made this alleged request, Principal Miller knew of her report to Superintendent Menzel. In other words, Plaintiff's Complaint fails to plead a causal link between her protected activity and Principal Miller's alleged request. For this reason, Plaintiff's retaliation claim also fails.

### F. Leave to Amend

Plaintiff requests leave to amend her Complaint to cure any defects the Court identifies. (Doc. 8 at 12). Defendant argues the Court should dismiss her Complaint and that any defects cannot be cured. (Doc. 9 at 7).

A court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) (citation omitted). Typically, a district court should not dismiss a complaint with prejudice if an amendment could save the complaint. *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Here, the Court dismisses only Plaintiff's employment retaliation claim but grants her leave to amend because an amendment could save her retaliation claim.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's retaliation claim is **DISMISSED**, but her sex discrimination claim will remain.

/ / /

/ / /

/ / /

/ / /

1    **IT IS FURTHER ORDERED** that Plaintiff's request for leave to file an amended complaint (Doc. 8) is **GRANTED**. Plaintiff shall file her Amended Complaint within 30 days of issuance of this Order.

Dated this 27th day of February, 2025.

*[signature]*

Honorable Diane J. Humetewa
United States District Judge

- 20 -